**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| In re Application of<br><br>**MIYA WATER PROJECTS**<br>**NETHERLANDS, B.V.,**<br><br>*Applicant.*<br><br>**To Obtain Discovery for Use in an**<br>**International Proceeding** |

**Case No. 1:23-mc-43 (CRC/GMH)**

## MEMORANDUM OPINION AND ORDER

Under 28 U.S.C. § 1782, a federal district court may compel (1) a person or entity within its district to respond to discovery requests filed by (2) an applicant that has an interest in a legal proceeding that (3) has been, or is reasonably contemplated to be, filed in a foreign or international tribunal.  If a court has that authority, then—as directed by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)—it must decide whether to exercise it, taking into account not only conventional discovery issues like relevance and burden, but also the nature of the foreign proceeding and its discovery tools.  Here, Miya Water Projects Netherlands B.V., ("Miya") has filed an amended application for the issuance of a subpoena to CG/LA Infrastructure Inc., ("CG/LA") related to potential legal proceedings in the Netherlands.  ECF No. 13.

After a thorough review of Miya's application and the record,[1] the Court will **GRANT** Miya's amended application, ECF No. 13, as set forth below.[2]

---

[1] The docket entries relevant to this Memorandum Opinion and Order are: (1) Declaration of Noam Komy, ECF No. 3 and attachments; (2) Declaration of Davine Roessingh, ECF No. 4; (3) Declaration of Tara Lee, ECF No. 5; (4) Order to Show Cause, ECF No. 6; (5) Response to Order to Show Cause, ECF No. 10; (6) Declaration of Benedict Bernstein, ECF No. 11; (7) Amended Application, ECF No. 13 and attachments; and (8) Notice of Withdrawal, ECF No. 14.  Citations to page numbers herein reflect the pagination assigned by the Court's Electronic Case Filing system.

[2] "Since the Court's decision on a Section 1782 application is non-dispositive, it may be decided by a magistrate judge by opinion and order, rather than a report and recommendation to the district court."  *In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, 439 F. Supp.

# I.   BACKGROUND

## A.   The Underlying Dispute

Miya is a Dutch company that provides water and wastewater services around the world, including services related to water efficiency, commercial management, and water treatment. ECF No. 13-1 at 9; ECF No. 3, ¶¶ 2–3. In 2018, Puerto Rico's Aqueducts and Sewer Authority ("PRASA")[3] and its Public-Private Partnership Authority ("P3 Authority")[4] launched a multi-year project to upgrade Puerto Rico's water systems with smart water metering technology. ECF No. 13-1 at 6; *see also* ECF No. 3-1 (Desirability and Convenience Study for project). PRASA and the P3 Authority issued a Request for Qualifications ("RFQ") in June 2018, seeking bids for "more efficient metering systems, remote meter reading technology and re-engineering of its customer services" (the "Water Metering Project"). ECF No. 13-1 at 12; *see also* ECF No. 3, ¶ 6; ECF No. 3-2 (RFQ). One bidding consortium, the IBT Group, ("IBT Group"), qualified to move on to the next stage of the process, the Request for Proposals ("RFP"). ECF No. 13-1 at 12; *see also* ECF

---

3d 290, 301 (S.D.N.Y. 2020) (citing *In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) ("This Court agrees with the majority of courts finding that rulings on § 1782 applications are *not* dispositive.")), *adhered to on reconsideration sub nom. In re Pishevar*, No. 19-mc-503, 2020 WL 1862586 (S.D.N.Y. Apr. 14, 2020); *see also In re Pons*, 614 F. Supp. 3d 1134, 1141 (S.D. Fla. 2020) (noting that "[t]he great majority of courts to address the issue" have determined that a magistrate judge may dispose of "Section 1782 discovery motions" by order rather than by report and recommendation and collecting cases). That said, the D.C. Circuit has recently held that an appeal of a magistrate judge's decision on a section 1782 application must first be addressed by a district judge pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(a) of the Federal Rules of Civil Procedure before it can be appealed to the Circuit. *See* Order, *Menashe v. Covington & Burling*, No. 21-7091 (D.C. Cir. Jan. 6, 2022) (dismissing appeal for lack of jurisdiction because a district judge had not yet ruled on objections to a magistrate judge's decision pursuant to Rule 72(a)); *cf. Charter Oil Co. v. Am. Emp'rs' Ins. Co.*, 69 F.3d 1160, 1171–72 (D.C. Cir. 1995) (holding that the D.C. Circuit lacked jurisdiction over an appeal of a magistrate judge's order on a non-dispositive dispute where no objections were filed to the order pursuant to Rule 72(a)), *cited in* Order at 1, *Menashe*, No. 21-7091. Accordingly, if Miya intends to appeal this Memorandum Opinion and Order, it must first file objections to this order with the assigned District Judge.

[3] PRASA is a public corporation and instrumentality of the government of Puerto Rico that "owns and operates Puerto Rico's public water supply and wastewater systems." *Puerto Rico Aqueduct and Sewer Authority,* https://perma.cc/ZH9T-8F9U (captured Sept. 8, 2023); *see also* P.R. Laws Ann. tit. 22, § 142.

[4] P3 Authority is a public corporation of the government of Puerto Rico that oversees its public-private partnerships. *See, e.g.*, P.R. Laws Ann. Tit. 27, §§ 2601(d), 2605.

No. 3, ¶ 7; ECF No. 3-3 (letter notifying IBT of qualification).  Miya joined the IBT Group in its bid shortly after it qualified.  ECF No. 3, ¶ 8.  In July 2019, the two final potential bidders for the RFP—the IBT Group (with Miya as its leader) and the BLU Water Consortium—each submitted proposals.  ECF No. 13-1 at 12–13; ECF No. 3, ¶¶ 8–9.

In August 2019, PRASA and the P3 Authority designated the IBT Group as the "Preferred Proponent" to complete the Water Metering Project.  ECF No. 1-2 at 6, 12; ECF No. 3-4 (notification letter).  This designation "was not an acceptance . . . of any or all of the conditions contained in [the IBT Group's] Proposal," but reflected the P3 Authority's "strong interest . . . in working with [the IBT Group] towards a transaction" to perform the project.  ECF No. 3-4 at 2.  According to Miya, over the "next two-plus years, Miya worked with PRASA and the P3 Authority to further refine its blueprints and prepare for the launch of the . . . upgrades" to Puerto Rico's water system.  ECF No. 13-1 at 7.  In the process, the IBT Group spent "millions of dollars and devot[ed] countless hours to developing proprietary engineering and work plans," and to "negotiating and renegotiating the draft P3 Agreement."  ECF No. 13-1 at 7, 13.  Miya alleges it incurred over $2 million in direct expenses.  *Id.* at 13; ECF No. 3, ¶ 12.

According to Miya, while it continued to work toward finalizing the P3 agreement to complete the Water Metering Project, members of the BLU Water Consortium—the entity that effectively lost the bid when Miya was designated the Preferred Proponent— "conspire[ed] with other entities and individuals to sabotage the project."  ECF No. 13-1 at 7.  Specifically, Miya contends that BLU Water Consortium member Sensus and its parent company, Xylem, Inc. ("Xylem"), as well as consultants from Moonshot Missions ("Moonshot") and Moonshot's CEO, George Hawkins, "hatched a plan to have the Water Metering Project cancelled and then rebid so

that members of the BLU Water Consortium could get a second bite at the apple." *Id.* at 7–9, 13–16.

Miya further states that, starting in May 2020, Mr. Hawkins (through Moonshot) served as an "independent advisor" to the Financial Oversight and Management Board ("the FOMB")[5] for Puerto Rico in connection with the Water Metering Project. *Id.* at 6, 13–14; ECF No. 3-5 (Hawkins contract). His contract with the FOMB states that he was retained to "assist [the FOMB] in connection with matters relating to implementation and monitoring for [PRASA's] current and future fiscal plans." ECF No. 3-5 at 10. As part of his contract, Mr. Hawkins certified that he had no conflicts of interest. *Id.* at 13–15. Miya alleges, however, that Mr. Hawkins worked for the FOMB without compensation "in hopes of wrongfully securing a lucrative opportunity for Xylem." ECF No. 1-2 at 13. Miya generally alleges that Mr. Hawkins worked to convince the FOMB to recommend the cancellation of the RFP for the Water Metering Project before the IBT Group could negotiate the final agreement by providing "false and misleading information about [the Group's] proposal." *Id.* at 7, 14. Miya does not provide any detail as to what Mr. Hawkins may have specifically said or advised the FOMB. However, it does proffer emails among Xylem employees in late 2021 and early 2022 describing how Xylem has been "working with [Puerto Rico] . . . for a while now to steer [the RFP]" toward Xylem for its benefit. ECF No. 13-2 at 2, 4.

As part of the scheme to cancel the RFP, Miya also alleges that CG/LA CEO Norman Anderson worked with Xylem, Sensus, and an additional "BLU Water Consortium partner ACEA S.p.A." as a consultant. ECF No. 13-1 at 8–9. According to Miya, Mr. Anderson "leveraged his ties to the Puerto Rican government (including the FOMB) in order to obtain non-public,

---

[5] The FOMB is a board appointed by the President of the United States, which has the authority to "supervise and modify Puerto Rico's law (and budget) to 'achieve fiscal responsibility and access to the capital markets.'" *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*, __ U.S. __, __, 140 S. Ct. 1649, 1655 (2020) (quoting 48 U.S.C. § 201(b)).

commercially sensitive information" about the project and the IBT Group's proposal. *Id.* at 8, 15. In support of this assertion, Miya appends an email from July 2020, wherein Mr. Anderson requested that he and an employee of Xylem "discuss how [they] can get the ACEA/Xylem team this win" because "[i]t's been a dirty business, and the way it's set up—with PRASA trying to make an award to a single bidder (ACEA had withdrawn)—is simply wrong." ECF No. 13-2 at 8. In a later email in August 2020, Mr. Anderson tells the same Xylem employee that he intended to have a call with his "friend," the "governor's liaison with the Fiscal Adjustment Board," to "register [their] interest in PRASA," to "highlight" that "no legal bid was actually conducted (since only one competitor)," to "get him thinking about what Xylem can do for them," and to "make sure that the door is open." *Id.* at 11. Miya alleges that a few days later, Mr. Anderson spoke with the then-liaison to the FOMB for the Puerto Rican Governor about the IBT Group's proposal, claiming that it had submitted an illegal bid. ECF No. 13-1 at 15. At the same time, Miya alleges that Mr. Anderson advised Xylem to contest the IBT Group's designation as Preferred Proponent and to apply "counter-pressure on the Puerto Rican government to ensure that the RFP would not be awarded to Miya and that an alternative project could be developed." *Id.*

Subsequently,[6] the FOMB recommended, based on "advice from their advisors," that it would not recommend the approval of the Water Metering Project as structured, citing problems with both the project's scope and cost. *Id.* (emphasis omitted); ECF No. 3-6 at 12 (Memorandum from "Partnership Committee" for the Water Metering Project referencing FOMB's recommendation that it should not be approved). Miya's CEO alleges in his declaration that the

---

[6] Miya asserts that the FOMB's recommendation came in October 2021. ECF No. 13-1 at 15; ECF No. 3, ¶15. The memo from the P3 Authority's partnership committee states that the recommendation came in October 2020. ECF No. 3-6 at 12. Whatever the date of the FOMB's recommendation, Miya asserts that it was caused by the actions of Mr. Hawkins and Mr. Anderson, as set forth above.

referenced "advisors" to the FOMB were Mr. Hawkins and Moonshot.  ECF No. 3, ¶ 15.  Based in part on the FOMB's recommendation, the P3 Authority canceled the RFP in December 2021, thereby stripping Miya of its status as the Preferred Proponent.[7]  *Id.*; ECF No. 3-6 at 2–3 (resolution of the Board of Directors of the P3 Authority), 4–15 (memo appended to Board resolution); ECF No. 3-7 (letter from P3 Authority to IBT).

One month later, in January 2022, PRASA and the P3 Authority issued a new RFP to replace Puerto Rico's water metering system that was materially different from the original RFP. ECF No. 13-1 at 8.  According to Miya, the new RFP omitted the work that made up the "core of Miya's proposal" and instead focused on the "core of Sensus's business."  *Id.*  Specifically, it excludes the work of turning the data generated by "smart" meters into increased revenues—work that Miya does—and instead focuses on the purchase and installation of the meters themselves— work that Sensus does—which, according to Miya, will "generate wasted data, rendering the meters 'smart' in name only."  *Id.* at 16; ECF No. 3, ¶ 16.  Miya's CEO asserts that because the new RFP focuses on the core of Sensus' business, Xylem (through Sensus) is now the "presumptive frontrunner" to win the project.  ECF No. 13-1 at 8; ECF No. 3, ¶ 17.

In sum, Miya asserts that a concerted effort was made by Xylem, Sensus, Moonshot, Mr. Hawkins, and Mr. Anderson to get the original RFP cancelled and to shape the new RFP into one more suited for Sensus, costing Miya millions and causing it to lose its opportunity to participate in Puerto Rico's project to upgrade its water infrastructure.

---

[7] The P3 Authority's Board of Directors' resolution terminating the project attached the memorandum from the "Partnership Committee for the Project," a group appointed by the Board, outlining the Committee's objections to the project.  ECF No. 3-6.  Perhaps unsurprisingly, the memorandum makes no reference to the scheme alleged by Miya. Rather, it describes "stalled" negotiations between the FOMB and the IBT Group related to adjustments due to the COVID-19 pandemic, and PRASA's improved financial condition since the initial RFP making the proposed financing for the project as originally conceived undesirable.  *Id.* at 9–15.

**B.      Procedural History**

1.      The Civil Matter

In light of the foregoing, Miya, a Dutch entity, is "contemplating proceedings in the Netherlands against Moonshot, Mr. Hawkins, Xylem, and potentially others for tort claims arising under Dutch law over which Dutch courts may exercise jurisdiction."   ECF No. 1-2 at 15.   In aid of that contemplated Dutch litigation, Miya filed its original Section 1782 application on May 2, 2023, seeking a targeted production of documents from CG/LA, an entity headquartered in the District of Columbia.  *Id.* at 17.   Miya believes that CG/LA holds information relevant to its contemplated Dutch claims because its "former CEO Norman Anderson acted as consultants to Xylem during the original RFP and directly advised Xylem in its efforts to cancel the original RFP." *Id.* at 15.

Consistent with this Court's practice, the undersigned issued an order directing Miya either to show cause why this matter should proceed *ex parte*, or to serve CG/LA with the Section 1782 application.  ECF No. 6.  In its response, Miya stated that the former CEO and sole principal of CG/LA, Norman Anderson, passed away in December 2021, and that his daughter, Janina Anderson took over the company as its managing partner.  ECF No. 10 at 2.  Miya represented that it had attempted service on Ms. Anderson on multiple occasions without success.  *Id.* at 3.

Miya further reported that in September 2022, Ms Anderson filed for Chapter 7 bankruptcy on behalf of the CG/LA.  *Id.* at 2; *see also* Ch. 7 Voluntary Pet., *In re CG/LA Infrastructure, Inc.,* No. 1:22-bk-172, ECF No. 1 (Bankr. D.D.C. Sept. 26, 2022).  On May 5, 2023, counsel for Miya emailed the Section 1782 application and related subpoena to CG/LA's bankruptcy counsel, Maurice VerStandig, and to counsel for the Bankruptcy Trustee, Joshua Cox.  ECF No. 10 at 3. Thereafter, Miya's counsel met and conferred with the Bankruptcy Trustee, Marc Albert; his

counsel Mr. Cox; and Mr. VerStandig.  *Id.*  Apparently during those conversations, Miya's counsel learned that, among the assets included in CG/LA's bankruptcy estate, was a "physical Hard Drive containing [CG/LA]'s available digital information," a copy of which remains in Bankruptcy Trustee's possession.  *Id.* at 2 (alteration in original) (quoting the record in the bankruptcy case).  During those conversations, CG/LA's bankruptcy counsel, Mr. VerStandig, as well as the Bankruptcy Trustee, Mr. Albert, consented to complying voluntarily with the subpoena by producing a copy of the contents of the hard drive containing CG/LA's available digital information,[8] "provided that the Bankruptcy Court first authorizes [the Trustee] to do so."  ECF No. 10 at 3; *see also* ECF No. 11-6 at 2 (proposed order authorizing compliance with the subpoena, to be signed by Elizabeth L. Gunn, U.S. Bankruptcy Judge).  To that end, Miya requested at that time that the matter be referred to Judge Gunn.  ECF No. 10 at 4.

The undersigned held a status conference in this matter on July 13, 2023.  Minute Entry (July 13, 2023).  On August 29, 2023, Miya filed an amended application, addressing issues raised by the Court at the conference.[9]  ECF No. 13.

### 2. The Bankruptcy Matter

In the bankruptcy proceeding before Judge Gunn, in December 2022, the Bankruptcy Trustee moved for authority to sell a hard drive belonging to the bankruptcy estate—the contents of which are the subject of the subpoena before this Court.  Trustee's Motion for Authority to Sell Assets Free and Clear of Any and All Liens and Interests Pursuant to 11 U.S.C.§ 363(b) and (f), *In re CG/LA Infrastructure, Inc.*, No. 22-bk-172 (Bankr. D.D.C. Dec. 29, 2022), ECF No. 28.  The

---

[8] Miya filed its response on June 6, 2023, attaching a different proposed subpoena unaccompanied by an application, seeking a "[c]opy of the contents of the physical hard drive containing CG/LA Infrastructure's available digital information." ECF No. 11-5 at 2.

[9] On September 1, 2023, Miya filed a notice of withdrawal of its original application.  ECF No. 14.

Trustee reported that CG/LA previously stored its "various digital business information and records both locally on the hard drives of several password-protected computers existing at the office, and through the cloud. Unfortunately, upon the death of [Mr. Anderson] the password information to access several of the computers . . . was lost," and any data solely on the physical hard drives of those computers is no longer available. *Id.*, ¶ 8. Nevertheless, the Trustee represented that the "majority of [CG/LA's] important digital information, including . . . financial information and customer data, was preserved in the cloud or on [an] accessible computer," and this data was downloaded and preserved on the hard drive, which is in the Trustee's possession. *Id.* Such data appears to have included "various event names and publications previously created by [CG/LA], logos and other visual branding, customer lists and marketing information." *In re CG/LA Infrastructure, Inc.*, No. 22-bk-172, ECF No. 28-1 at 1. The Trustee sought authorization from Judge Gunn to sell any interest in the digital files, as well as the hard drive itself, to an individual named Anand Hemnani, a former employer of CG/LA. *In re CG/LA Infrastructure, Inc.*, No. 22-bk-172, ECF No. 28, ¶¶ 10, 13, 14, 17. Judge Gunn granted that motion in January 2023. Order, *In re CG/LA Infrastructure, Inc.*, No. 22-bk-172 (Bankr. D.D.C. Jan. 20, 2023), ECF No. 30. In February 2023, the Trustee reported that the hard drive was delivered to the purchaser, and that the Trustee retained a backup of all data "for the use of the Trustee through the pendency of the bankruptcy case." *In re CG/LA Infrastructure, Inc.*, No. 22-bk-172, ECF Nos. 28, 30, 32. It is the contents of that backup of the hard drive which is the subject of the subpoena that Miya seeks to execute through its Section 1782 application pending before this Court.

On August 1, 2023, Miya filed a consent motion seeking leave from the Bankruptcy Court to serve the subpoena on the Trustee as set forth in the amended application before this Court. Consent Motion to Authorize Service of Subpoena on CG/LA Infrastructure, Inc., *In re CG/LA*

*Infrastructure, Inc.*, No. 22-bk-172 (Bankr. D.D.C. Aug. 15, 2023), ECF No. 44.  On September 5, 2023, Judge Gunn granted that motion.  Order, *In re CG/LA Infrastructure, Inc.*, No. 22-bk-172 (Bankr. D.D.C. Sept. 5, 2023), ECF No. 47; *see also* ECF No. 16 (notice of order in bankruptcy proceeding).

### C.    The Amended Section 1782 Application

As noted, on August 29, 2023, Miya filed an amended application addressing the issues raised at the status conference on July 13, 2023.

#### 1.    Proposed Foreign Proceeding

With respect to the issue of the nature of the contemplated foreign proceeding, Miya states that it retained Dutch counsel, Davine Roessingh, in "mid-2022" with the "hope[] of bringing claims" against Mr. Hawkins, Moonshot, and Xylem in Dutch court.   ECF No. 3, ¶ 18. Specifically, "Miya anticipates commencing a tort claim against Moonshot, George Hawkins, and/or Xylem, alleging they conspired to provide the FOMB with false and misleading information . . . so that the RFP would be cancelled and the RFP process restarted, giving Xylem and its Sensus [water meters] a second chance to win the RFP."  ECF No. 4, ¶ 12.  Ms. Roessingh asserts that a tort claim may be brought under the Dutch Civil Code alleging that Moonshot, Mr. Hawkins, or Xylem acted tortiously against Miya by "violat[ing] either specific (ethical or statutory) rules" or by "fail[ing] to observe a duty of care toward Miya, reasonably knowing that they would inflict losses on Miya."  *Id.*, ¶ 14.  Further, under Dutch law, if "it can be established that Moonshot, George Hawkins, and/or Xylem intentionally caused or contributed to the decision to cancel the RFP," then those actors may be held liable for Miya's losses suffered as a result of the cancellation. *Id.*, ¶ 15.

Ms. Roessingh further asserts that pursuant to the Dutch Code of Civil Proceedings, a Dutch court has jurisdiction over these claims because the "damaging event has occurred or may occur in the Netherlands." *Id.*, ¶ 17.  Acknowledging that mere financial loss incurred by a Dutch entity in a Dutch bank account is insufficient for jurisdiction, she notes that Dutch case law has established that "initial" financial losses, plus "additional specific circumstances," can serve as the basis for jurisdiction, as can cases where the plaintiff suffered loss of profits, if accompanied by undefined "additional circumstances," or reputational damage. *Id.*, ¶ 20.   Here, Ms. Roessingh argues, Miya suffered direct financial losses including legal fees and financial commitment fees, millions of dollars of lost profits arising from the cancelled Water Metering Project, and damage to its reputation in the Netherlands, a "strong hub for water engineering," arising from the the loss of its Preferred Proponent status. *Id.*, ¶¶ 23–28.  Accordingly, Ms. Roessingh concludes that Dutch courts may exercise jurisdiction over the tort claims that Miya is contemplating bringing in the Netherlands. *Id.*, ¶ 28.

Finally, Ms. Roessingh asserts that Dutch courts have accepted evidence collected through a Section 1782 application like this one. *Id.*, ¶ 3-–32.

### 2.   Discovery Sought and Proposed Protective Order

In its amended application, Miya proposes execution of a subpoena on CG/LA, via the Bankruptcy Trustee, requesting the production of a "copy of the contents of the physical hard drive containing CG/LA . . . available digital information."  ECF No. 13-4 at 2.  In an effort to ensure that it receives only information from the hard drive relevant to its potential tort claims, Miya proposes the Court enter a protective order directing that the Trustee provide a copy of the contents of the hard drive to a third-party vendor, Innovative Driven.  ECF No. 13-1 at 24; ECF No. 13-3 at 8.  That vendor will first evaluate the file structure and metadata of the information from the

hard drive to identify files appearing to relate to Norman Anderson or other "loose" files that do not have another named custodian.  ECF No. 13-1 at 24; ECF No. 13-3 at 8.  The vendor will do so in consultation with Miya but without revealing the contents of the files to Miya.  *Id.*  Next, the vendor will run a series of search terms relevant to Miya's claims and will produce to Miya only the files that contain those terms.  *Id.*; *see also* ECF No. 13-3 at 11–12 (proposed protective order containing list of search times).  To protect any privileged information that may be among the material produced to it, Miya proposes that it be ordered to destroy any such information it becomes aware of, or, if it believes that any privilege over such information has been waived, then it be permitted to seek a determination from the Court that it may retain that information.  ECF No. 13-3 at 8–9.

## II.    LEGAL STANDARD

Section 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person . . . .  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  A two-stage inquiry informs whether a federal court will grant a motion under section 1782(a).  First, the court must determine whether it *can* order the requested relief— that is, whether it has the authority to do so; second, it must decide whether it *should* order the requested relief—that is, whether to exercise its discretion to do so, keeping in mind the statute's "twin aims of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance in our courts.'"  *Intel*

*Corp.*, 542 U.S. at 252, 255 (quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002)).

As to the first step, "[a] district court has the authority to grant an application when . . . (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an interested person." *In re Veiga*, 746 F. Supp. 2d 8, 17 (D.D.C. 2010) (citing 28 U.S.C. § 1782(a)). The second step is informed by the following four factors outlined in *Intel*: (1) whether the target of the discovery request is a participant in the foreign or international proceeding, (2) the nature of the foreign tribunal and character of its proceedings, (3) whether the application is an attempt to "circumvent foreign proof-gathering restrictions or other policies," and (4) whether the request is "unduly intrusive or burdensome." *Id.* (quoting *Intel*, 542 U.S. at 264–65). "The discretionary guidelines in *Intel* do not command that each factor be weighed equally, nor do they dictate whether any particular factor should take preceden[ce]." *In re Application of Leret*, 51 F. Supp. 3d 66, 71 (D.D.C. 2014). Rather, these factors are merely designed to "guide" a court adjudicating a section 1782 discovery application. *See Intel*, 542 U.S. at 247.

## III. DISCUSSION

### A. *Ex Parte* Consideration

District courts are generally authorized to review a § 1782 application on an *ex parte* basis, *In re Application of Masters for an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in a Foreign Proceeding*, 315 F. Supp. 3d 269, 272 (D.D.C. 2018) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*." (quoting *Gushlak v. Gushlak*, 486 Fed. App'x. 215, 217 (2d Cir. 2012))), and as a general matter, *ex parte* review is "justified by the fact that the parties [from whom discovery is sought] will be given

adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it," *In re de Leon*, No. 19-mc-0197, 2020 WL 1047742, at *3 (D.D.C. Mar. 4, 2020) (alteration in original) (quoting *In re Letter of Request from Supreme Ct. of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991)).

In this case, in response to the order requiring Miya to show cause why this application should be considered on an *ex parte* basis, ECF No. 6, Miya represented that it attempted without success to provide notice of this matter to Ms. Anderson on four occasions at her home address, and twice at another address associated with her.  ECF No. 10 at 3; see also ECF Nos. 11-1 (affidavit of nonservice), 11-2 (same), 11-3 (same).  It then provided the materials to CG/LA's bankruptcy counsel and to the counsel for the Trustee.  ECF No. 10 at 3; see ECF No. 11-4 (email to bankruptcy counsel and trustee).  After filing its amended application, Miya once more attempted to serve Ms. Anderson via certified mail at her home address.  ECF No. 15.  Because Ms. Anderson has not responded and appears to be taking steps to avoid involvement in this matter, the Court will consider this application *ex parte*.

### B.    Section 1782's Statutory Requirements

As noted, a court has the authority to grant a Section 1782 application if, at the time the application is filed, (1) the person or entity from whom discovery is sought resides or can be found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal that is pending or reasonably contemplated; and (3) the application is made by an interested person.  *See In re Veiga*, 746 F. Supp. 2d at 17.  The Court will consider each of those statutory requirements in turn.

1.      The person or entity from whom discovery is sought resides or can
        be found within the district

The first requirement is satisfied.  "Courts appear to agree . . . 'that a corporation is "found"

in a district where it is headquartered or incorporated.'" *In re DiGiulian*, No. 19-cv-132, 2020 WL

5253849, at *3 (D.D.C. Sept. 3, 2020) (quoting *In re Application of Masters*, 315 F. Supp. 3d at

274).  Common principles of personal jurisdiction inform this analysis.  *See In re Pishevar*, No.

21-mc-105, 2023 WL 2072454, at *2 (D.D.C. Feb. 17, 2023).

Here, CG/LA's headquarters were located in Washington, D.C. before its bankruptcy.  ECF

No. 5-2 (D.C. Consumer and Regulatory Affairs business registration); *see also* Voluntary Petition

for Non-Individuals Filing for Bankruptcy at 1, *In re CG/LA Infrastructure, Inc.*, No. 22-bk-172

(D.D.C. Sept. 26, 2022), ECF No. 1 at 1.  In addition, the Trustee of the bankruptcy estate, who

presently possesses the discovery that Miya seeks, is located in Washington, D.C.  ECF No. 11-5

at 2.  Therefore, the person or entity from whom discovery is sought resides or can be found within

this district.

2.      The discovery is for use in a proceeding before a foreign or
        international tribunal that is pending or reasonably contemplated

"[T]o show that a foreign proceeding is in reasonable contemplation, the applicant must

provide "some objective indicium that the action is being contemplated" and will be brought within

a reasonable time."  *In re of Lucille Holdings Pte. Ltd*., No. 21-mc-99, 2022 WL 1421816, at *13

(D.D.C. May 5, 2022) (quoting *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by*

*Affiliates of Fortress Inv. Grp. LLC*, 798 F.3d 113, 123 (2d Cir. 2015)).  In analyzing the issue,

courts must balance "Congress's desire that broad discovery be available for parties involved in

international litigation" against "the potential that parties may use section 1782 to investigate

whether litigation is possible in the first place," which "is not an appropriate [basis] for a court to

compel discovery."  *In re Certain Funds*, No. 14 Civ. 1801, 2014 WL 3404955, at *6 (S.D.N.Y.

July 9, 2014), *aff'd*, 798 F.3d 113; *see also In re Bouka*, 637 F. Supp. 3d 74, 86 (S.D.N.Y. 2022)

(articulating the "distinction between cases in which an applicant intends to file pending new

information and those in which an applicant needs new information to decide whether to file at

all"), *modified on reconsideration on other grounds*, __ F. Supp. 3d __, 2023 WL 1490378

(S.D.N.Y. 2023).

This Court has identified a non-exhaustive list of considerations to guide the assessment of

whether the foreign proceeding is in reasonable contemplation, including:

> (1) the contemplated claims;
> (2) the preparations made for filing those claims (including audits, investigations, and retention of foreign counsel);
> (3) the tribunal in which those claims will be brought;
> (4) the time frame in which those claims will be brought; and
> (5) the evidence supporting those claims.

*Lucille Holdings*, 2022 WL 1421816, at *13; *compare In re Furstenberg Finance SAS*, 877 F.3d

1031, 1035 (11th Cir. 2017) (finding reliable indications of reasonable contemplation where the

petitioner asserted it would file proceedings in Luxembourg within 45 days of receiving discovery

sought and included specific evidence supporting its claims for fraud under Luxembourg law), *and*

*Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 F. App'x 319, 323 (5th Cir.

2015) (finding reliable indications of reasonable contemplation where the petitioner filed a sworn

affidavit from a partner at the law firm representing the petitioner asserting that an action would

be filed "imminently" in a particular foreign court and laid out "in great detail" the facts giving

rise to the prospective action), *and In re Bouka*, 637 F. Supp. 3d at 85 (finding reliable indications

of reasonable contemplation where the petitioner had retained local counsel, laid out a basis for

liability, and identified the factual basis of his claims), *with  In re Lucille Holdings,* 2022 WL

1421816, at *14 (finding insufficient indicia of reasonable contemplation where petitioner

suggested causes of action but was "investigating and contemplated asserting other potential

causes of action" and was "continuing [to investigate] additional claims and the appropriate jurisdiction and tribunal for asserting them"), *and In re Campuzano-Trevino*, No. 22-cv-365, 2022 WL 570254, at *4 (D. Md. Feb. 24, 2022) (finding that proceedings were not within reasonable contemplation where potential claim was based on "unspecified media disclosures," petitioner gave "no concrete timeline" for the filing of the claim, did not "develop[] a theory of liability," and gave no "insight in to what information he expect[ed] to obtain through his discovery, or how such information will assist the prosecution of his prospective case").

In this case, Miya asserts that it is "contemplating bringing claims in the Netherlands," ECF No. 13-1 at 9, and has provided the Court with some detail as to the "potentially-to-be-filed proceedings," ECF No. 4, ¶ 2.  It retained Dutch counsel, Ms. Roessingh, in mid-2022.  ECF No. 3, ¶ 18; ECF No. 4, ¶ 2.  In Ms. Roessingh's affidavit, she (1) represents that Miya "anticipates commencing a tort claim against Moonshot, George Hawkins, and/or Xylem" in the Dutch District Court based on their alleged conspiracy to provide the FOMB with misleading information leading to the cancellation of the RFP; and (2) describes potential causes of action under Dutch law and bases for Dutch court jurisdiction over such claims.  ECF No. 4, ¶¶ 12–28.  In its amended application, Miya has also provided some factual support for such a claim.  That evidence includes: (1) emails between Mr. Anderson and Xylem staff in the summer of 2020, after Miya had been designated the Preferred Proponent, wherein Mr. Anderson expressed an intent to make sure the "door [was] open" for Xylem to win the project by reaching out to his contact in the Puerto Rican government, ECF No. 13-1 at 16–17; ECF No. 13-2 at 8, 11; and (2) emails among Xylem employees after the original RFP was canceled, where one employee states that he had met with members of PRASA who had told him that a "new RFP for Puerto Rico" would be issued and that "we had been working with [Puerto Rico] . . . for a while now to steer this our way," ECF No. 13-

1 at 16–17, ECF No. 13-2 at 2, 4–6.  This evidence serves as factual support for Miya's claims, as well as evidence of Miya's investigation and preparation for the foreign proceeding.

In sum, Miya has retained Dutch counsel who has explained in a detailed affidavit the specifics of the tort claim to be brought in the  District Court of Amsterdam against Mr. Hawkins, Moonshot Missions, and Sensus and/or Xylem, and Miya has further provided some factual basis for its claims, through the evidence received from the additional Section 1782 applications filed in other judicial districts in preparation for this proceeding.  Such a showing leads this Court to find that the Dutch proceedings are in reasonable contemplation.  *See Bravo Express*, 613 F. App'x at 323 (finding a foreign proceeding to be within reasonable contemplation where the applicant proffered a detailed affidavit from counsel regarding the claims, the facts underlying the claims, the preparation for filing suit, and the foreign court in which they would be filed); *In re Bouka*, 2022 WL 15527657, at *7 (similar).

3.    The application is made by an interested person

As to the third requirement, the Supreme Court has defined an "interested person" as a person or entity that "possess[es] a reasonable interest in obtaining [judicial] assistance."  *Intel*, 542 U.S. at 256 (alterations in original) (quoting Hans Smit, *International Litigation Under the United States Code*, 65 Colum. L. Rev. 1015, 1027 (1965)).  Courts have found entities that contemplate initiating foreign litigation qualify as "interested persons."  *See, e.g.*, *In re Tovmasyon*, 557 F. Supp. 3d 348, 356 (D.P.R.  2021) ("Here, Petitioners are 'interested persons' for Section 1782 purposes because, as noted earlier, they 'anticipate initiating a proceeding as claimants in the High Court of England and Wales in London, England.'" (quoting the record)); *accord In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, No. 15-mc-319, 2015 WL 5824505, at *1 (S.D.N.Y. Oct. 6, 2015).  Put another way, "[a]n individual who intends to initiate proceedings in a foreign tribunal satisfies this third statutory requirement."  *In re Pishevar*, 2023

WL 2072454, at *3.  Because this Court has found that Miya intends to initiate proceedings in the District Court of Amsterdam, the third requirement is met here.

### D.     The Court's Discretion

Even where a Court has the statutory authority to grant a Section 1782 application, it need not do so in the exercise of its discretion.  The Supreme Court has identified four factors that may be used to guide a district court's discretion in resolving such an application:  (1) whether the target of the discovery request is a participant in the foreign or international proceeding, (2) the nature of the foreign tribunal and character of its proceedings, (3) whether the application is an attempt to "circumvent foreign proof-gathering restrictions or other policies," and (4) whether the request is "unduly intrusive or burdensome."  *In re Veiga*, 746 F. Supp. 2d at 17 (quoting *Intel*, 542 U.S. at 264–65).  "[T]he *Intel* factors are non-exhaustive, and a court may exercise its discretion to deny a petition based on other considerations."  *In re Petition of the Republic of Turkey*, No. 19-cv-20107, 2020 WL 4035499, at *2 (D.N.J. July 17, 2020) (citing *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010)); *see also In re Bayerische Motoren Werke AG*, No. 19-MC-80272, 2019 WL 5963234, at *3 (N.D. Cal. Nov. 13, 2019) (noting that the *Intel* factors are "non-exhaustive"); *JSC MCC EuroChem v. Chauhan*, No. 17-mc-5, 2018 WL 3872197, at *3 (M.D. Tenn. Aug. 15, 2018) ("In *Intel Corp.*, the Court repeatedly emphasized that these factors are non-exhaustive and 'may' be taken into account as applicable." (quoting *Intel*, 542 U.S. at 264–65)).

In this case, the Court finds that the four factors counsel in favor of granting the application. The first factor— whether the target of the discovery request is a participant in the foreign or international proceeding—does so because CG/LA is not an anticipated defendant in the foreign proceeding.  ECF No. 13-1 at 25; *see In re Pishevar*, 2023 WL 2072454, at *3  (finding first factor

weighed in favor of granting application to serve subpoena on a "nonparticipant in the matter arising abroad").

The second factor also weighs in favor of granting Miya's request. This factor considers the nature of the foreign tribunal, the character of the proceedings, and the receptivity of the foreign court to U.S. judicial assistance. *In re DiGiulian*, 314 F. Supp. 3d 1, 7 (D.D.C. 2018). Courts in the United States presume that foreign tribunals will be receptive to evidence obtained here and find that this factor weighs in favor of granting an application in the absence of "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *In re Pishevar*, 2023 WL 2072454, at *3 (quoting *In re DiGiulian*, 314 F. Supp. 3d at 8). Here, there is no contention that Dutch courts would reject evidence obtained from this application. Indeed, Ms. Roessingh asserts that Dutch courts have held that evidence collected through a 1782 application may be used in Dutch proceedings. ECF No. 4, ¶ 32. Other courts have agreed with this assertion. *See In re Upper Brook Cos.*, No. 22-mc-97, 2022 WL 17904562, at *7–8 (S.D.N.Y. Dec. 23, 2022) (finding that this factor weighed in favor of granting a Section 1782 application where there was no evidence that Dutch courts would reject such evidence); *In re Hulley Enters., Ltd.*, 358 F. Supp. 3d 331, 347 (S.D.N.Y. 2019) (concluding that the second *Intel* factor favored production of documents based on petitioners' showing that "Dutch law permits the submission of evidence collected through section 1782"), *aff'd*, 400 F. Supp. 3d 62 (S.D.N.Y. 2019).

The third factor also weighs in favor of granting the application. Nothing in the record indicates that Miya's application is seeking discovery here to circumvent the proof-gathering rules or policies of either this Court or the Dutch courts. *See In re Pishevar*, 2023 WL 2072454, at *4 (finding that absent evidence of an attempt to circumvent foreign rules, third factor weighed in

favor of granting application); *accord DiGiulian*, 314 F. Supp. 3d at 9; *In re Veiga*, 746 F. Supp. 2d 8, 25 (D.D.C. 2010).

Finally, the fourth factor evaluates whether the scope of the requested discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265 (noting that "unduly intrusive or burdensome requests may be rejected or trimmed"). Courts have interpreted this inquiry to encompass consideration of "the relevance of the requested discovery to the foreign proceeding." *In re an Order Pursuant to 28 U.S.C. § 1782*, No. 17-cv-1466, 2017 WL 3708028, at *4 (D.D.C. Aug. 18, 2017); *see also In re de Leon*, 2020 WL 1047742, at *3 (D.D.C. Mar. 4, 2020) (finding the fourth factor weighed in favor of granting the application, even where "compliance might be costly and complex," because the "requests [were] tailored to issues . . . relevant to the . . . proceedings"). Courts have also considered concerns of privilege in evaluating the burden that discovery would impose. *See Menashe v. Covington & Burling LLP*, 552 F. Supp. 3d 35, 44 (D.D.C. 2021). Indeed, Section 1782(a) cautions that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a); *but see In re Veiga*, 746 F. Supp. 2d at 26 (granting a Section 1782 application and finding that the parties' blanket arguments about privilege were premature).

In this case, Miya's proposed subpoena seeks the contents of CG/LA's hard drive, which appears to contain event names, publications created by CG/LA, visual branding, customer lists, and marketing information. Trustee's Motion for Authority to Sell Assets Free and Clear of Any and All Liens and Interests Pursuant to 11 U.S.C.§ 363(b) and (f), *In re CG/LA Infrastructure, Inc.*, No. 22-bk-172 (Bankr. D.D.C. Dec. 29, 2022), ECF No. 28. Much of the information on this hard drive is likely to be irrelevant to the proof that Miya is seeking to support its claims. To address this issue, Miya proposes that the Court enter a protective order directing the Bankruptcy

Trustee to provide a copy of the contents of the hard drive to a third-party vendor.  ECF No. 13-1 at 24; ECF No. 13-3 at 8.  The vendor will evaluate the files and related metadata in consultation with Miya—but without disclosing their contents—to identify files that either relate to Mr. Anderson or "loose" files that do not appear to have an identified custodian.  *Id.*  Among those files, the vendor will then run a set of search terms focused on Miya's potential claims regarding the Water Metering Project and send to Miya only the files that contain these search terms.  ECF No. 13-1 at 24; ECF No. 13-3 at 8, 11–12.  All other material will be destroyed by the third-party vendor.  *Id.*  The undersigned is satisfied that the search terms and procedure proposed by Miya will minimize any burden on CG/LA and the Trustee and will produce discovery that is "relevant to the issues in dispute in the [foreign] proceeding."  *In re DiGiulian*, 2020 WL 5253849, at *5.

In addition, the undersigned is satisfied that any concerns regarding privileged material on the hard drive has been adequately addressed by Miya.  As an initial matter, any privilege that may have existed over material on the hard drive was likely waived when the hard drive was sold to a third party with no effort made to prevent any such material from being accessed by the buyer.  See *CFTC' v. Weintraub*, 471 U.S. 343, 358 (1985) (holding that a bankruptcy trustee can waive privilege over pre-bankruptcy communications); *Cramton v. Grabbagreen Franchising LLC*, No. 17-cv-04663, 2021 WL 871539, at *2–3 (D. Ariz. Mar. 9, 2021) (holding that voluntarily turning over a physical hard drive to a third party waives attorney-client privilege over the contents of the hard drive); *United States v. Mackey*, No. 10-cr-310, 2012 WL 3260462, at *3–4 (N.D. Ga. Aug. 8, 2012) (same); *Stooksbury v. Ross*, No. 09-cv-498, 2012 WL 3779113, at *3 (E.D. Tenn. Aug. 31, 2012) (finding that selling computers to a third party waived privilege over the contents on the computers); *In re New England Compounding Pharmacy, Inc*., No. 13-mdl-2419, 2016 WL 6883215, at *2 (D. Mass. July 16, 2016) (same).  Even assuming that some privileged material

may remain on the hard drive, the Court finds the protective order proposed by Miya addresses that concern.  *See* ECF No. 13-3.  That order directs that if Miya becomes aware of privileged information, it shall destroy that information.  ECF No. 13-3 at 8–9. Alternatively, if Miya believes that any privilege over such information has been waived, then the order permits Miya to seek a determination from the Court that it may retain that information.  *Id.*

The Court finds that that procedure sufficiently addresses any remaining privilege concerns, particularly where the record before the undersigned does not contain any indication that privileged communications are either present on the hard drive or will be captured by the proposed search terms delineating the material that will be produced to Miya.  *See In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 252 (2d Cir. 2019) (holding that the district court did not abuse its discretion in finding that any issues of confidentiality from granting Section 1782 application could be addressed through a protective order); *In re O'Keeffe*, 646 F. App'x 263, 268–69 (3d Cir. 2016) (same).

Accordingly, all four *Intel* factors weigh in favor of granting Miya's application.

## III.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Amended Application of Miya Water Projects for an Order Permitting Discovery under 28 U.S.C. § 1782 (ECF No. 13) is **GRANTED**.  It is further

**ORDERED** that, in light of Judge Gunn's September 5, 2023 Order authorizing service of and compliance with the subpoena in the Bankruptcy Matter, Miya is granted leave to serve the proposed subpoena *duces tecum* at ECF No. 13-4, directing CG/LA, through the Bankruptcy Trustee, to produce the materials requested in the subpoena to Innovative Driven, c/o Joel Harper, 1700 N. Moore Street, Suite 1500, Arlington, VA 22209, or at another mutually agreeable location.

*See* Order Authorizing Trustee to Comply with Subpoena, *In re CG/LA Infrastructure, Inc.*, No. 22-bk-172 (Bankr. D.D.C. Sept. 5, 2023), ECF No. 47, .  It is further

      **ORDERED** that CG/LA, through the Bankruptcy Trustee, shall produce the requested discovery within 30 days of the entry of this Memorandum Opinion and Order, or on some other date mutually agreeable to the interested parties, and in conformity with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Columbia. Discovery shall be subject to the terms of the Protective Order entered contemporaneously with this Memorandum Opinion and Order, as well as to any conditions imposed by Judge Gunn in *In re CG/LA Infrastructure, Inc.*, No. 22-bk-172.  It is further

      **ORDERED** that until further Order by this Court, CG/LA, through the Bankruptcy Trustee, shall preserve all documents, electronic or otherwise, and any evidence in its possession, custody, or control that contain information potentially relevant to the subject matter of the foreign proceeding at issue in the Amended Application.

      **SO ORDERED.**

Date:  September 27, 2023

                                            _____
                                            G. MICHAEL HARVEY
                                            UNITED STATES MAGISTRATE JUDGE